**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **TELESHIA COOPER,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CASE NO.:** |
| | ) | |
| **V.** | ) | **PLAINTIFF DEMANDS TRIAL** |
| | ) | **BY STRUCK JURY** |
| **AUBURN UNIVERSITY,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Teleshia Cooper, and files this Complaint for damages against the Defendant, Auburn University, to be answered within 21 days pursuant to the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

Mrs. Cooper was a dedicated employee of Auburn University since 2019. She always had good evaluations for her work performance until 2024.  This is when Mrs. Cooper and other members of her family began to experience health issues. Mrs. Cooper sought accommodation and leave to take care of her family. At that point, Mrs. Cooper's supervisor, Meghan Jones' attitude toward her changed. Meghan Jones began to closely scrutinize Mrs. Cooper and repeatedly wrote her up for minor infractions that others were not being disciplined for. These progressive write-ups culminated in Mrs. Cooper's unlawful termination.

## II.    JURISDICTION

1.      This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2.      This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII), 42 U.S.C. §1983 based on 42 U.S.C. 1981, the FMLA, and Section 504 of the Rehabilitation Act.

## III.    EXHAUSTION OF ADMINISRATIVE REMEDIES

3.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).

4.      Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

5.      There are no exhaustion requirements for claims made under §1983 pursuant to §1981, the FMLA, or Section 504 of the Rehabilitation Act.

## IV.    PARTIES

6.      Plaintiff, Teleshia Cooper, ("Plaintiff" or "Cooper") is a resident of Auburn,  located in Lee County, and performed work for the Defendant in the counties composing the Middle District of Alabama, Eastern Division during the events of this case.  Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the  Division.

7.      Defendant, Auburn University ("Auburn" or "Defendant"), is a public university incorporated under the laws of Alabama Code §16-48-1 et. al.

8.      Defendant, Auburn, is an employer within the meaning of Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991", 42 U.S.C. §2000 (e) et. seq. and the Rehabilitation Act.

9.      Defendant employed at least five hundred 500 or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's need to utilize FMLA.

## V.    FACTS

10.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

11.     Mrs. Cooper is African American colloquially referred to as "black".

12.     On or about October 1, 2019, Mrs. Cooper was hired by Auburn University to work in the College of Nursing, as in a Nursing Lab Staff position on a part-time basis.

13.    There were eleven personnel on the simulation team, with only two black employees within that eleven.

14.    At the faculty level, there were five simulation faculty members, with only one black employee within that five.

15.    Mrs. Cooper was hired to work 30 hours per week.

16.    Mrs. Cooper's supervisor was Meghan Jones, Director of Clinical Simulation and Skills.

17.    Meghan Jones is Caucasian colloquially referred to as "white".

18.    After COVID, the work week needs changed and increased the employees' workloads.

19.    Meghan Jones asked the employees to work more than the originally set hours and be comped time to use when those needs decreased.

20.    Initially, Mrs. Cooper was able to work the extra hours requested, but that changed when Mrs. Cooper had health issues and family issues arose.

21.    Mrs. Cooper has a child with Cerebral Palsy.

22.    On November 8, 2024, one of Mrs. Cooper's children had to stay home due to being ill.

23.    When Mrs. Cooper returned home from work, the child was minimally responsive.

24.    This child was admitted to the hospital and placed on a ventilator.

25.    Mrs. Cooper's husband also has medical issues and blood clots.

26.    In the Fall of 2023, Mrs. Cooper informed Meghan Jones what was going on and that she would not be able to work over 30 hours per week for that reason.

27.    Meghan Jones thanked Mrs. Cooper for letting her know and told her it would be fine.

28.    Once Ms. Cooper's child returned home, she applied for FMLA.

29.    In the year preceding her FMLA request to care for her son and husband, Mrs. Cooper worked  at least 1250 hours.

30.    After this conversation with Meghan Jones, Mrs. Jones attempted to schedule Mrs. Cooper for over 30 hours per week.

31.    Each time Meghan Jones scheduled her over 30 hours, Mrs. Cooper informed her again she would be unable to work more than 30 hours per week due to upcoming medical appointments for herself, her child and her husband.

32.    Prior to this happening from 2019 until 2023, Mrs. Cooper received all good evaluations at work reflecting "meets expectations" or "exceeds expectations".

33.    On or about February 9, 2024, Mrs. Cooper arrived at 9:21 AM for her a 9:30 AM shift.

34.    Mrs. Coooper was written up for not attending a run-through which began at 9:00 AM.

35.    Mrs. Cooper had a conflict that day at that time and it was prior to her scheduled start time.

36.    Mrs. Cooper had marked her attendance to this run through as tentative.

37.    Other employees were not present at this run-through and were given the ability to appear by zoom, but they were not written up or disciplined.

38.    Two white employees, Loren Lankford and Margot Fox, had previously completely forgot a scheduled run through while they were on campus without disciplinary action.

39.    On May 21, 2024, Mrs. Cooper was 6 minutes late for an orientation for skills lab after she had a doctor's appointment.

40.    Mrs. Cooper had notified the primary contact for Skills Lab Activities, Karol Renfroe, in front of three witnesses, that she would potentially be late due to a doctor's appointment.

41.    Loren Lankford, Rachel Elliott, Carolyn Allen all whom are Lab Staff Nurses, along with other clinical adjuncts (all white employee) were late multiple times to student engagements without repercussion.

42.    Meghan Jones has been late to student involved activities.

43.    Mrs. Cooper witnessed Loren Lankford being late at least 13 times, one of which she was 14 minutes late.

44.     Meghan Jones was aware Loren Lankford was late as stated above, but did not give her the same attention she gave to Ms. Cooper's minor infractions.

45.     None of these individuals listed in paragraphs 41-43 were written up or disciplined.

46.     But on or about May 21, 2024, Meghan Jones issued Mrs. Cooper a formal Verbal Reprimand for tardiness.

47.     On or about June 24, 2024, at 8:59 AM, Meghan Jones communicated via email a change in the location of a run-through that was scheduled to begin at 9:00 days prior to the event.

48.     Mrs. Cooper looked at her phone, went to the new location, and arrived at the new location for the run-through at 9:04 AM.

49.     Others were already in the new location and settled as if they already knew the location had changed before the message was sent.

50.     Others were able to not attend and were able to view the zoom recording.

51.     Upon arrival in the new location, Meghan Jones looked at her watch, told Mrs. Cooper she was waiting to see if she would be on time.

52.     Meghan Jones issued Mrs. Cooper a formal Written Reprimand for tardiness.

53.     During the write up, Meghan Jones told Mrs. Cooper she waited in the original area to see her arrival.

54.     On one occasion, Mrs. Cooper had an issue with a student who came unprepared to a simulation.

55.     Mrs. Cooper informed and emailed the course leader and copied the student because she had no other way to inform them what she made as the student appeared without the Clinical Evaluation Tool (CET) which is used to grade students after simulation or skills.

56.     Students were required to have the CET at all times.

57.     Meghan Jones told Mrs. Cooper it was inappropriate of her to copy the student on the email.

58.     One white gay employee made inappropriate comment about wanting to play with male students, and a student complained.

59.     On July 9, 2024, Mrs. Cooper was having issues with a Microsoft application.

60.     IT confirmed the technological issues specifically affected Dell computers.

61.     Mrs. Cooper had a Dell computer and experienced these technological issues.

62.     Mrs. Cooper experienced issues with her emails.

63.     Claudia Hendeson and other Dell users also had these issues with their computers, the Microsoft application, and their emails.

64.     On or about July 16, 2024, Meghan Jones issued Mrs. Cooper a Performance Improvement Plan (PIP) for tardiness, communication, and some other ambiguous language.

65.     The PIP was embedded in Mrs. Cooper's performance evaluation.

66.     The fact Mrs. Cooper was being placed on a PIP was not discussed with Mrs. Cooper during her evaluation.

67.     The terms of the PIP were not discussed with Mrs. Cooper and it was presented to her as a routine annual evaluation.

68.     The Associate Dean was also present during the evaluation.

69.     The performance evaluation rated Mrs. Cooper as "Marginal" citing attendance and "communication issues" that were never previously mentioned in prior evaluations to Mrs. Cooper.

70.     The PIP called for the supervisor, Meghan Jones, to meet with Mrs. Cooper every two weeks, but Meghan Jones did not do this with Mrs. Cooper.

71.     The PIP had no expiration date which was unusual.

72.     PIP's normally had a 90 day or 6-month duration if extended.

73.     Loren Lankford and Rachael Elliot (both white) were also in Nursing Lab Staff positions, but they were not disciplined for tardiness.

74.    Meghan Jones watched Mrs. Cooper's comings and goings, but she did not watch the comings and goings of white employees or employees who needed accommodation to handle family medical issues.

75.    The week of July 21, 2024, Mrs. Cooper filed a grievance alleging race discrimination, but she was told it was not a grievable offense.

76.    At this meeting with HR, Mrs. Cooper was stunned as she learned she had been placed on a PIP.

77.    Mrs. Cooper asked what the duration of the PIP was during this meeting with HR.

78.    Mrs. Cooper was not provided an answer as to the duration of the PIP.

79.    According to AUCON's business manager, Lindsey Trammel, there has never been a formal tardiness policy.

80.    After the PIP, meetings with HR shifted focus from the alleged wrongful tardiness to unrelated matters such as obtaining the lunches for Standardized Patients (SP's), or sending emails to instructors regarding the grading tool, which is used to grade all students on their clinical performance.

81.    After her complaint, Meghan Jones began to double-book Mrs. Cooper for multiple job duties setting her up for failure.

82.    On or about August 16, 2024, Mrs. Cooper filed a race discrimination complaint with the Title IX office alleging she is the only black employee on the

team, but Meghan Jones treated her differently singling her out for unfair discipline, retaliation, and harassment.

83.    Both parties received Notice of the Complaint on August 16, 2024, that informed them of the alleged violations.

84.    All three of Meghan Jones' witnesses were interviewed for this Title IX complaint, but none of the witnesses Mrs. Cooper listed were interviewed.

85.    On or about October 28, 2024, Meghan Jones issued Mrs. Cooper a formal Written Reprimand for "failure to complete job duties as assigned".

86.    White employees were provided assistance performing their job duties if they were unable to complete them timely or if difficulty arose.

87.    Mrs. Cooper was expressly told she could not utilize the help from the administrative assistant Susan, or from student workers when she was unable to complete work or difficulty arose.

88.    Mrs. Cooper was told it was her responsibility and was not provided assistance.

89.    Prior to her complaint, Mrs. Cooper had not been assigned to pick up SP lunches if she was working at a student event or had other duties on her calendar.

90.    Some days Mrs. Cooper was required to do both work with student and pick up food, but schedule adjustments were made, food was allowed to arrive late, or someone else was able to pick it up.

91.     After her complaint, Mrs. Cooper was the only employee required to pick up lunches regardless of what was on her calendar.

92.     The failure to complete job duties as assigned stemmed from an incident one day when Meghan Jones expected Mrs. Cooper to pick up SP lunches.

93.     The day Mrs. Cooper was expected to pick up lunches, she was also assigned to work with a detailed and involved role with students at an event in a different location and could not leave.

94.     Mrs. Cooper was expected to leave her post where she was working to pick up the lunches for a simulation she was not even assigned to.

95.     When Mrs. Cooper arrived at Chic Fil-A to pick up the lunch, she had to wait for the order.

96.     Mrs. Cooper was written up for being late returning with the lunches.

97.     White employees had been late picking up lunches but they were not written up or otherwise disciplined for failing to perform their work duties.

98.     Mrs. Cooper was told she didn't communicate the need for someone else to pick up the lunches and was continuously told it was her responsibility.

99.     But Meghan Jones scheduled Mrs. Cooper's assignments and was aware she was already assigned to work multiple rotations with the students at the event.

100.   Because Meghan Jones had to place the assignments on Mrs. Cooper's shared calendar, she was aware Mrs. Cooper was already assigned to perform other work.

101.   Meghan Jones simply told Mrs. Cooper it was her responsibility to pick up the lunches.

102.   During the meeting with HR to discuss this write up, Meghan Jones finally agreed Mrs. Cooper could have assistance with the lunches.

103.   On or about December 12, 2024, both parties were notified that the Investigative Report and evidence gathered during the investigation were available for review.

104.   On or about December 20, 2024, both parties provided a written response to the Investigative Report.

105.   On or about January 23, 2025, Meghan Jones sent an email to all Lab Staff regarding communication on the shared calendar, EAGLES team text group, AU Email/Calendar Invites, Unforeseen Circumstances, and anticipated absences.

106.   Mrs. Cooper had already been performing all of these tasks since being placed on the PIP.

107.   On or about February 7, 2025, Mrs. Cooper was informed of the outcome of her August 16, 2024, complaint.

108.   On or about February 11, 2025, at 7:30 AM Meghan Jones texted Mrs. Cooper that she had to be in a meeting with HR at 8:00 AM.

109.   Mrs. Cooper attended a meeting with Human Resources wherein Mrs. Cooper was informed her employer was considering discharge and placed her on leave with pay.

110.   On or about February 12, 2025, Mrs. Cooper made another race discrimination and retaliation complaint.

111.   On or about February 24, 2025, Mrs. Cooper was informed she would be discharged on February 28, 2025.

112.   Defendant terminated Plaintiff's employment on or about February 28, 2025.

113.   The stated reason for Mrs. Cooper's termination was that she had not demonstrated the necessary and sustained improvement required for her position.

114.   But Mrs. Cooper only had 3 tardies the entire year of 2024.

## VI.   CLAIMS

## COUNT I- FMLA INTERFERENCE

115.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

116.   During the 12-month period before , Defendant employed Plaintiff for at least 1,250 hours of service.

117.   Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's need to utilize FMLA.

118.   Plaintiff provided notice of foreseeable FMLA leave to her supervisor as she notified her about her child with Cerebral Palsy, her other child being on a ventilator, her own health issues, and her husband with blood clots.

119.   Defendant made Mrs. Cooper feel as though she could not use her FMLA and she worked the appointments around her schedule as much as possible.

120.   By making Mrs. Cooper feel she was unable to use FMLA without repercussions, Defendant interfered with Plaintiff's FMLA rights by effectively not allowing her to commence leave.

121.   On February 28, 2025, Defendant terminated Plaintiff's employment for pretextual reasons.

122.   Because of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT II - FMLA RETALIATION

123.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

124.   Plaintiff has established a convincing mosaic of direct and circumstantial evidence she was retaliated against based on her request to take FMLA.

125.   During the 12-month period before , Defendant employed Plaintiff for at least 1,250 hours of service.

126.   Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

127.   Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

128.   Plaintiff provided notice of foreseeable FMLA leave to her supervisor.

129.   Before Plaintiff informed Defendant of a need for FMLA leave she had all favorable evaluations and no issues with communication, attendance or tardiness.

130.   After notifying Defendant of the need for FMLA, Defendant created unequal disciplinary issues to begin the progressive disciplinary processs.

131.   On February 28, 2025, terminated Plaintiff's employment on .

132.   Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT III- REHABILITATION ACT – ASSOCIATION DISCRIMINATION

133.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

134.    Plaintiff has established a convincing mosaic of direct and circumstantial evidence of association discrimination.

135.    Plaintiff's child suffers from a Physical impairment Cerebral Palsy which required travel to many appointments and rehabilitation.

136.    Plaintiff's other child was placed on a ventilator.

137.    Plaintiff's husband suffers a Physical impairment of blood clots.

138.    Plaintiff's child and husband's disabling conditions affect their major life activities of the circulatory system (for the husband), and movement and posture, damage to the brain, exaggerated reflexes, are significantly restricted as compared to the average person in the general population (for the child).

139.    Plaintiff required the reasonable accommodation of not having to work hours over her normal work schedule of thirty hours.

140.    Plaintiff requested that Defendant provide this reasonable accommodation of not being required to work past her normal work schedule of thirty hours.

141.    Plaintiff was able to perform the essential functions of her job with without accommodation for her husband and child's disability.

142.   The Defendant initially said it was fine but then did not accommodate her by trying to schedule Mrs. Cooper more hours, or by making schedule changes without asking her to determine if there was a conflict.

143.   The Defendant failed to engage in the interactive process required by the Americans with Disabilities Act even though Plaintiff was able to perform the essential functions of her job.

144.   As a result of Defendant's violation of the Rehabilitation Act, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT IV- REHABILITATION ACT – ASSOCIATION DISCRIMINATION – TERMINATION

145.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

146.   Plaintiff has established a convincing mosaic of direct and circumstantial evidence she was terminated based on her association with disability.

147.   Plaintiff's child suffers from a Physical impairment Cerebral Palsy which required travel to appointments and rehabilitation.

148.   Plaintiff's other child  was placed on a ventilator.

149.   Plaintiff's husband suffers a Physical impairment of blood clots.

150.   Plaintiff's child and husband's disabling conditions affect their major life activities of the circulatory system (for the husband), and movement and posture,

damage to the brain, exaggerated reflexes, are significantly restricted as compared to the average person in the general population (for the child).

151.  Plaintiff requested the reasonable accommodation of not having to work hours over her normal work schedule of thirty hours.

152.  Plaintiff requested that Defendant provide this reasonable accommodation of not being required to work past her normal work schedule of thirty hours.

153.  After this request for accommodation, the Defendant began the progressive disciplinary process by writing up Mrs. Cooper for minor infractions that all other employees who had not requested accommodations to care for family members engaged in.

154.  After this request for accommodation, the Defendant began the progressive disciplinary process by writing up Mrs. Cooper for minor infractions relating to technological issues IT was working on for which she had no control.

155.  After this request for accommodation, the Defendant began to set up Mrs. Cooper for failure by scheduling her to perform two job duties at the same time, then critiquing her for not being able to perform job duties in two places at once.

156.  At all times relevant to this complaint, Plaintiff performed the essential functions of her job duties as in a satisfactory or better manner.

157.   On February 28, 2025, Defendant terminated Plaintiff's employment, citing her attendance and communication as the reason which was pretextual.

158.   As a result of Defendant's violation of the Rehabilitation Act, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT V– REHABILITATION ACT — ASSOCIATION RETALIATION

159.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

160.   Plaintiff's child suffers from a Physical impairment Cerebral Palsy and was placed on a ventilator.

161.   Plaintiff's husband suffers a Physical impairment of blood clots.

162.   Plaintiff's child and husband's disabling conditions affect their major life activities of the circulatory system (for the husband), and movement and posture, damage to the brain, exaggerated reflexes, are significantly restricted as compared to the average person in the general population (for the child).

163.   Plaintiff engaged in a protected activity when she requested the reasonable accommodation of not having to work hours over her normal work schedule of thirty hours.

164.   Plaintiff requested that Defendant provide this reasonable accommodation of not being required to work past her normal work schedule of thirty hours.

165.  After this request for accommodation, the Defendant began the progressive disciplinary process by writing up Mrs. Cooper for minor infractions that all other employees who had not requested accommodations to care for family members engaged in.

166.  After this request for accommodation, the Defendant began the progressive disciplinary process by writing up Mrs. Cooper for minor infractions relating to technological issues IT was working on for which she had no control.

167.  After this request for accommodation, the Defendant began to set up Mrs. Cooper for failure by scheduling her to perform two job duties at the same time, then critiquing her for not being able to perform job duties in two places at once.

168.  At all times relevant to this complaint, Plaintiff performed the essential functions of her job duties as in a satisfactory or better manner.

169.  On February 28, 2025, Defendant terminated Plaintiff's employment, citing her attendance and communication as the reason which was pretextual.

170.  Because of Defendant's violation of the Rehabilitation Act, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT VI-  TITLE VII - RACE -DISPARATE TREATMENT

171.  Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

172.   Plaintiff has established a convincing mosaic of direct and circumstantial evidence she was treated differently based on her race.

173.   Plaintiff is black.

174.   Plaintiff was qualified for the position of Nursing Lab Staff and did successfully perform the position of Lab Staff.

175.   Defendant's employee, Meghan Jones treated Plaintiff differently based on her race in job assignments and terms and conditions of employment when she disciplined Plaintiff for minor tardies while allowing white employees to be consistently late (as much as 13 times and once being 14 minutes late), placed her on a PIP, when she scheduled her to work two different job duties in two different locations, when she disciplined her for the IT technological issues for which she had no control, and when she terminated her.

176.   White employees engaged in the same or similar conduct but were not subjected to progressive discipline, a PIP, and remained employed as stated in the factual paragraphs above.

177.   Defendant's actions in treating Plaintiff differently in her job assignments, terms and conditions, and termination of employment violated Title VII.

178.   Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

179.   Defendant's Race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

180.   Because of Defendant's discriminatory decision made in whole or in part because of her race, Plaintiff has lost pay and continues to be paid less.

## COUNT VII- TITLE VII- RACE- DISCHARGE

181.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

182.   Plaintiff has established a convincing mosaic of direct and circumstantial evidence she was treated differently based on her race.

183.   Plaintiff is black.

184.   Plaintiff was qualified for the position of Nursing Lab Staff.

185.   Defendant's employee, Meghan Jones treated Plaintiff differently based on her race in job assignments and terms and conditions of employment when she disciplined Plaintiff for minor tardies while allowing white employees to be consistently late (as much as 13 times and once being 14 minutes late), when she scheduled her to work two different job duties in two different locations, when she disciplined her for the IT technological issues for which she had no control, and when she terminated her.

186.   White employees engaged in the same or similar conduct but were not subjected to progressive discipline, a PIP, and remained employed as stated in the factual paragraphs above.

187.   Defendant's actions in treating Plaintiff differently which led to her termination of employment violated Title VII.

188.   Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

189.   Defendant's Race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

190.   Because of Defendant's discriminatory decision made in whole or in part because of her race, Plaintiff has lost pay and continues to be paid less.

## COUNT VIII- TITLE VII- RETALIATION

191.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

192.   Plaintiff was qualified for the position and able to perform the essential functions of the job.

193.   Plaintiff engaged in protected activities when she reported discrimination based on race in a grievance, to the Title IX office, and to Human Resources.

194.   In close temporal proximity to her complaints, the Defendant began the process of progressive discipline for actions that white employees were engaged in but not disciplined.

195.   In close temporal proximity to her complaints of race discrimination, the Defendant assigned Plaintiff to two job simultaneous tasks in different locations, then wrote her up because couldn't be in both places at once --which set her up for the next step in progressive discipline.

196.   In close temporal proximity to her complaints, the Defendant held Plaintiff accountable for "communication" when the communication issues were computer problems that the IT department did not fix --once again setting her up for the next step in progressive discipline.

197.   On or about February 28, 2025,  in close temporal proximity to her complaints terminated Plaintiff's employment.

198.   But for Plaintiff's protected activity, Defendant would have retained Plaintiff in the position as a Nursing Lab Staff.

199.   Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

200.   Because of Defendant's violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

VII. **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Rehabilitation Act, Title VII and the FMLA;

B.      Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated, with removal of Meghan Jones from her position, and placement of notice of Meghan Jones' violations of the Rehabilitation Act, FMLA, and Title VII in her permanent record;

C.      Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

D.      Attorneys' fees and costs;

E.      Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

F.      Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**JURY TRIAL DEMANDED**

_____
Patricia A. Gill

**OF COUNSEL:**

The Workers' Firm
2 20th Street North, Suite 900
Birmingham, Alabama 35203
T: 205.329-6392
trish@theworkersfirm.com

## PLEASE SERVE DEFENDANT AS FOLLOWS

Auburn University
Care of:  Office of General Counsel
182 S. College Street
101 Samford Hall
Auburn University, AL 36849